UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

ZHENKAI SUN, WEI GAO,
YANGYANG GAO,[1] and CHARLES
CHIPENGULE, *on behalf of themselves and
others similarly situated*,

                Plaintiffs,

      -against-

SUSHI FUSSION EXPRESS, INC., *d/b/a
Sushi Fussion*, MICHAEL M. YUGADAEV,
SUSHI FUSSION LLC, *d/b/a Sushi Fussion*,
SUSHI FUSSION OF KINGS HWY, INC.,
*d/b/a Sushi Fussion*, LEVA KATANOV,
LEVI KATANOV, LEO KATANOV, SUSHI
FUSSION FIVETOWN, INC., *d/b/a Sushi
Fussion*, SUSHI FUSSION OF 47™ STREET
INC., *d/b/a Sushi Fussion*, SUSHI FUSSION
OF FOREST HILLS, INC., *d/b/a Sushi
Fussion*, SUSHI FUSSION OF NYC INC.,
*d/b/a Sushi Fussion*, and HIBACHI EXPRESS
MAIN ST. INC., *d/b/a Hibachi Express*,

                Defendants.

-------------------------------------------------------X

**REPORT AND RECOMMENDATION
16 CV 4840 (RPK)(LB)**

**BLOOM, United States Magistrate Judge:**

      Plaintiffs Zhenkai Sun, Wei Gao, Yangyang Gao, and Charles Chipengule, on behalf of

themselves and other similarly situated, bring this civil action against individual defendants,

Michael Yugadaev[2] and Leva Katanov (a/k/a Levi Katanov or Leo Katanov), and eight corporate

defendants doing business as "Sushi Fussion" and "Hibachi Express," to recover damages for

---

[1] Since commencing this lawsuit, Yangyang Gao has officially changed his name to "Eddie Gao."
ECF No. 162, fn 2. Any judgment entered should reflect plaintiff's new name.
[2] Plaintiffs consistently misspell Mr. Yugadaev's last name "Yagudaev." The docket identifies defendant
"Yugadaev," and that spelling is used throughout this Report and Recommendation.

violations of their rights under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et* seq.,

the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 190, 650 *et seq*., and New York Codes,

Rules and Regulations ("NYCRR"), 12 NYCRR § 146. ECF No. 55. Defendants Michael

Yugadaev and Sushi Fussion Express, Inc., ("Sushi Fussion Express") answered both the original

and first amended Complaint, ECF Nos. 15, 25. On July 17, 2017, Plaintiffs amended their

Complaint a second time to add defendants, including Hibachi Express. ECF No. 55.  Despite

proper service of the summons and second amended complaint, Michael Yugadaev, Sushi Fussion

Express, and Hibachi Express ("the Yugadaev defendants") failed to respond to the Second

Amended Complaint ("SAC") or otherwise defend this action from that juncture. Plaintiffs now

move for a default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure

against the Yugadaev defendants. The Honorable Rachel P. Kovner referred plaintiffs' motion for

a default judgment to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b).

For the reasons set forth below, it is respectfully recommended that plaintiffs' motion for a default

judgment should be granted as to liability; it is further recommended that the Court should deny

any award of damages without prejudice as plaintiffs have not filed sufficient record evidence to

assess plaintiffs' claim for damages against these defaulting defendants.

## BACKGROUND

The facts set forth herein are drawn from the uncontested allegations in plaintiffs' SAC,

ECF No. 55, and are taken as true for purposes of deciding this motion. See Transatlantic Marine

Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997) (deeming well-

pleaded allegations in complaint admitted on motion for a default judgment.)

Defendant Sushi Fussion Express is a domestic business corporation with its principal

address at 71-32 Main Street, Flushing, NY 11367. SAC, ¶ 11. Defendant Hibachi Express is a

domestic business corporation with a principal address at 141-25 Jewel Avenue, Flushing, NY 11367. Id. ¶ 33. Both corporations engaged in interstate commerce and had gross sales in excess of five hundred thousand dollars per year at all relevant times. Id. ¶¶ 12, 34.

Individual defendant Michael Yugadaev is an officer, director, manager, and/or majority shareholder or owner of Sushi Fussion Express and Hibachi Express. Id. ¶ 36. Plaintiffs know Mr. Yugadaev as "Boss." Id. ¶ 37. He managed the Sushi Fussion Express and Hibachi Express restaurants, hired workers, and determined pay, schedules, and employment policy. Id. Mr. Yugadaev handled all the money at Sushi Fussion Express and Hibachi Express and was responsible for paying employees at those restaurants. Id. ¶¶ 39, 41. Mr. Yugadaev determined plaintiffs' rates of pay and kept handwritten payroll records for Sushi Fussion Express. Id. ¶ 40. He personally hired plaintiff Charles Chippengule. Id. ¶ 38.

Plaintiff Yangyang Gao was employed as a sushi chef at Sushi Fussion Express from October 20, 2013 to October 2, 2016. Id. ¶ 76.  Mr. Yangyang Gao worked eleven hours and twenty minutes Sundays through Thursdays, six and a half hours on Fridays, and three and a half hours on Saturday nights, for a total of sixty-six and a half hours per week. Id. ¶¶ 82, 83. During that time, Mr. Yangyang Gao was paid a flat rate of $925 per week. Id. ¶ 84. He was paid on a two-week cycle: in cash at the end of the first week, and part by cash, part by check at the end of the second week. Id. ¶ 85. Plaintiff was not informed of his hourly pay rate. Id. ¶ 89. Mr. Yangyang Gao was required to sign statements saying he worked fewer hours per week than he actually did, and always fewer than forty. Id. ¶ 88. During his employment, Mr. Yangyang Gao had ten to thirty minutes to eat lunch, however the break was not fixed, and plaintiff had to return to work whenever the restaurant was busy. Id. ¶ 93.

Plaintiff Wei Gao was employed as a sushi chef at Sushi Fussion Express from July 2015 to July 29, 2016. Id. ¶ 94. Mr. Wei Gao worked for eleven and a half consecutive hours a day Sundays through Thursdays, seven hours a day on Fridays, and three and a half hours a day on Saturdays, for a total of fifty-six and a half hours per week. Id. ¶¶ 95, 96. Plaintiff was paid a flat rate of $750 per week in cash, and he was not informed of his hourly pay rate. Id. ¶¶ 99, 101. Mr. Wei Gao had a thirty-to-forty-minute meal break that was not fixed and could not eat when the restaurant had customers. Id. ¶ 98. Defendants still owe Mr. Wei Gao his pay for his last week of work. Id. ¶ 102.

Plaintiff Zhenkai Sun was employed as a sushi chef at Sushi Fussion Express from April 2014 to June 2015. Id. ¶ 106. Mr. Sun worked eleven and a half hours on Sundays, Tuesdays, Wednesdays and Thursdays, seven hours on Fridays, and three and a half hours on Saturdays, for a total of fifty-six and a half hours per week. Id. ¶¶ 107, 108. Plaintiff Sun was paid a flat rate of $775 per week in two-week cycles: by cash the first week; and $495 in cash and $280 by check the second week. Id. ¶¶ 112, 113. Mr. Sun was not informed of his hourly pay rate. Id. ¶ 110. Mr. Sun had a thirty-to-forty-minute meal break that was not fixed, and he could not eat when the restaurant had customers. Id. ¶ 109.

From November 2013 to December 2014, plaintiff Charles Chipengule was hired by Michael Yugadaev to work at Sushi Fussion Express as a kitchen worker. Id. ¶¶ 117, 121. During that time, Mr. Chipengule worked twelve and a half hours a day Sundays through Thursdays, seven hours a day on Fridays, and three and a half hours a day on Saturdays, for a total of seventy-three hours per week. Id. ¶¶ 122, 123. During this time, plaintiff Chipengule was paid at a rate of $11.00 per hour. Id. ¶ 126.

From May 2015 to July 2015, Mr. Chipengule was employed as a fry cook at Hibachi Express. Id. ¶ 118. When Hibachi Express closed in July 2015, he began working again at Sushi Fussion Express as a kitchen worker. Id. ¶ 119. During his employment at Hibachi Express and Sushi Fussion Express from May 2015 to November 2015, Mr. Chipengule worked fourteen hours a day, Sundays through Thursdays, seven hours a day on Fridays, and three and a half hours a day on Saturdays, for a total of eighty and a half hours per week. Id. ¶¶ 124, 125.  During this period, he was paid at a rate of $12.50 per hour. Id. ¶ 127.

Throughout his employment, Mr. Chipengule was paid in cash every Friday. Id. ¶ 128. The time plaintiff worked was recorded by hand by Mr. Yugadaev. Id. ¶ 129. Mr. Chipengule was afforded no meal or rest breaks during his employment. Id. ¶ 133.

Plaintiffs allege that at all relevant times to their claims herein, the defendants knowingly and willfully violated their rights under the Fair Labor Standards Act when they failed to pay them their lawful overtime compensation. Id. ¶¶ 87, 103, 114, 130. Plaintiffs also allege they were not paid spread of hours compensation as required under state law when they worked more than ten hours a day. Id. ¶¶ 91, 105, 116, 134. Finally, plaintiffs allege defendants failed to provide the required wage notices and wage statements. Id. ¶¶ 183, 187.

## PROCEEDURAL HISTORY

On August 30, 2016, plaintiffs Wei Gao and Zhenkai Sun commenced this action on behalf of themselves and others similarly situated[3] against the defendants Sushi Fussion Express and Mr. Yugadaev. See Complaint, ECF No. 1. Both defendants were served with the summons

---

[3] On March 6, 2018, Judge Kuntz adopted my Report and Recommendation granting plaintiffs' motion to conditionally certify a collective action regarding all sushi chefs and kitchen workers employed at Sushi Fussion, LLC, Sushi Fussion Express, Inc., and all kitchen workers at Hibachi Express. ECF No. 78. Plaintiffs are the only employees who joined the collective action.

and Complaint on September 13, 2016. ECF No. 8; ECF No. 9. Although defendants did not respond to the complaint by the deadline, the parties agreed to extend the time for defendants to answer. ECF No. 12. Defendants Sushi Fussion Express and Michael Yugadaev answered the Complaint on November 18, 2016. ECF No. 15.

On that same day, plaintiffs filed an Amended Complaint, adding Yangyang Gao as a plaintiff and additional corporate and individual defendants.[4] ECF No. 20. Defendants Sushi Fussion Express and Michael Yugadaev answered the Amended Complaint and filed a counterclaim on January 2, 2017. ECF No. 25. Defendants also filed a memorandum of law regarding their counterclaims. ECF No. 33.

On April 17, 2017, counsel for defendants notified the Court that his clients had discharged him from the case for lack of funds. ECF No. 36. The Court advised defendants that a corporation can only appear by counsel in federal court and ordered defendants to retain new counsel by May 15, 2017. ECF No. 37. The Court directed plaintiffs to take appropriate action if the corporate defendants did not retain new counsel by May 15, 2017. Id. Attorney Robert Aronov appeared on behalf of defendants Sushi Fussion Express and Michael Yugadaev on May 15, 2017. ECF No. 41.

On July 17, 2017, plaintiffs filed their SAC, adding Charles Chipengule as a plaintiff and Hibachi Express as a defendant. SAC, ECF No. 55.[5] Although Margarita Rubin of Robert

---

[4] Plaintiffs originally filed the wrong document and filed the correct Amended Complaint on November 21, 2016, ECF No. 20.

[5] The parties appeared before Judge William F. Kuntz to set a briefing schedule for defendants' motion to dismiss on August 29, 2017. See Minute Entry for Proceedings held on August 29, 2017. The motion to dismiss was briefed and submitted by defendants Leva Katanov and Sushi Fussion LLC, not the subjects of plaintiffs' instant motion for a default judgment. ECF No. 71.

Aronov & Associates, P.C. noticed her appearance on defendants' behalf, ECF No. 63,[6] on April 10, 2018, Robert Aronov & Associates moved to withdraw as counsel for defendants Sushi Fussion Express, and Michael Yugadaev, due to his client's failure to cooperate.[7] ECF No. 79. Defendants Michael Yugadaev, Sushi Fussion Express, and Hibachi Express never responded to the SAC.

The Court held a conference to address Mr. Aronov's motion to withdraw on April 25, 2018. Defendant Yugadaev appeared at the conference, and the Court granted Aronov's motion to withdraw. See Order dated April 25, 2018. Mr. Yugadaev stated that he had filed for Chapter 7 bankruptcy and was preparing to file for corporate bankruptcy. Id. The Court ordered Mr. Yugadaev to file proof of bankruptcy by April 30, 2018. Id. The Court reminded Mr. Yugadaev in its April 30th Order that he may represent himself in this action, but that a corporation can only appear by counsel in federal court. ECF No. 89. The Court ordered Sushi Fussion Express and Hibachi Express to retain new counsel by May 31, 2018. Id.

In its July 17th Order, the Court noted that the corporate defendants had failed to retain counsel and directed plaintiffs to take appropriate action. ECF No. 98. Plaintiffs requested a certificate of default against Sushi Fussion Express and Hibachi Express. ECF Nos. 100, 101. The Clerk of Court noted entry of the corporate defendants' default on August 6, 2018. ECF No. 102.

Defendant Yugadaev appeared at a status conference on August 8, 2018. ECF No. 104. Plaintiffs informed the Court of their motion before Judge Drain in the Bankruptcy Court to

---

[6] The docket incorrectly identifies Ms. Rubin as appearing on behalf of Sushi Fussion LLC, however her notice lists Sushi Fussion Express, Michael Yugadaev, and Hibachi Express.

[7] Mr. Aronov's motion to withdraw did not reference Hibachi Express.

vacate the automatic stay against Michael Yugadaev to allow plaintiffs to proceed to judgment in the present action. Mr. Yugadaev was directed to file proof of filing for corporate bankruptcy by August 10, 2018. ECF No. 105. Plaintiffs filed the Bankruptcy Court Order lifting the stay on August 9, 2018. ECF No. 106. Defendant Yugadaev filed notice of the bankruptcy case filed for himself and for Sushi Fussion Express. ECF No. 107.

Judge Kovner[8] held a pretrial conference on February 10, 2021; defendant Yugadaev failed to appear. <u>See</u> Order dated February 11, 2021. On November 9, 2021 Judge Kovner so ordered the parties' Joint Pretrial Order. Five of the named defendants, represented by attorney Michael Samuel, proceeded to trial.[9] <u>See</u> Order dated November 9, 2021. Plaintiffs informed the Court that they would seek a verdict against the defendants appearing at trial and that they would move for a default judgment against the remaining defendants. ECF No. 147.

A jury trial was held before Judge Kovner from November 15 – 17, 2021. <u>See</u> Minute Entry dated November 17, 2021. Defendant Yugadaev did not participate. The Court entered judgment for plaintiff Yangyang Gao against the defendants who appeared.[10] ECF No. 153. The Court directed plaintiffs to move for a default judgment against the defendants who did not appear. <u>Id.</u>

Plaintiffs requested entry of a default against Michael Yugadaev on December 23, 2021. ECF No. 159. Plaintiffs filed a motion for a default judgment against Sushi Fussion Express,

---

[8] The case was reassigned from Judge Kuntz to Judge Kovner on January 30, 2020.
[9] Defendants Sushi Fussion LLC, Sushi Fussion of 47th Street, Inc., Sushi Fussion of Forest Hills, Inc., Sushi Fussion of NYC, Inc., and Leva Katanov proceeded to trial.
[10] The Court entered a $87,352.23 judgment for plaintiff Yangyang Gao for damages for unpaid minimum wages, overtime wages, and spread of hours compensation, $87,352.21 in liquidated damages, $2,500 in wage notice damages, and $2,500 in wage statement damages. <u>See</u> Order dated December 9, 2021. The parties stipulated that Yangyang Gao was an employee of a defendant who appeared through October 19, 2013. ECF No. 149. Plaintiff Yangyang Gao's employment at Sushi Fussion Express, defendant herein, began on October 20, 2013. SAC ¶ 76. The jury made no findings regarding the other plaintiffs. ECF No. 153.

Hibachi Express, and Michael Yugadaev on the same day. ECF No. 160. Plaintiffs' motion

includes plaintiffs' counsel's declaration, ECF No. 161, and a memorandum in support of a

default judgment, ECF No. 162. The Clerk of Court noted entry of Michael Yugadaev's default,

ECF No. 168, and Judge Kovner referred plaintiffs' motion for a default judgment to me. See

Order referring motion, dated December 24, 2021.

## DISCUSSION

### I.    Legal Standard

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a

plaintiff to obtain a default judgment. Priestly v. Headminder, Inc., 647 F.3d 497, 504 (2d Cir.

2011). First, "[w]hen a party against whom judgment for affirmative relief is sought has failed to

plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must

enter the party's default." Fed. R. Civ. P. 55(a). The Second Circuit recognizes a broad definition

of the phrase "otherwise defend" and has found it to include a party's failure to continue its

participation in a case. City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 130-31

(2d Cir. 2011) (finding that the term "otherwise defend" permits entry of default even after a

defendant has answered the complaint). Second, after a default has been entered against a

defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the

Court may, on a plaintiff's motion, enter a default judgment. Fed. R. Civ. P. 55(b)(2).

In light of the Second Circuit's "oft-stated preference for resolving disputes on the

merits," default judgments are "generally disfavored." Enron Oil Corp. v. Diakuhara, 10 F.3d 90,

95–96 (2d Cir. 1993). "Accordingly, plaintiff is not entitled to a default judgment as a matter of

right simply because a party is in default." Finkel v. Universal Elec. Corp., 970 F. Supp. 2d 108,

118 (E.D.N.Y. 2013) (citing Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162

(S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice")).

On a motion for a default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic Marine Claims Agency, Inc., 109 F.3d at 108. In determining whether to issue a default judgment, the Court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Rolls-Royce plc v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). In other words, "'[a]fter default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law.'" Id. (citation omitted). In evaluating "whether the unchallenged facts constitute a legitimate cause of action," the Court is limited to the four corners of the complaint. Id. (citation omitted). It is not so restricted in determining damages, which the Court may calculate based on documentary evidence, affidavits, or testimony at a hearing on damages. See Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111.

## II.    Liability

Plaintiffs bring several claims against the Yugadaev defendants under FLSA and NYLL. Plaintiffs assert claims for minimum wage and overtime pay under FLSA and NYLL. Plaintiffs allege further violations of NYLL: failure to pay spread of hours, failure to provide wage notice and wage statements, failure to provide meal periods, and failure to maintain records.

**A.  Plaintiffs Meet the Requirements for Protection Under FLSA and NYLL**

**1.  Plaintiffs Establish an Employer-Employee Relationship Under FLSA and NYLL**

Generally, FLSA requires that employers pay employees a minimum wage and overtime. See Locke v. St. Augustine's Episcopal Church, 690 F. Supp. 2d 77, 84 (E.D.N.Y. 2010).  To assert a claim under FLSA, a plaintiff must demonstrate that he is an "employee," as defined by the statute, and that his employer is "an enterprise engaged in commerce." Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 31-32 (E.D.N.Y. 2015) (citing 29 U.S.C. §§ 206(a), 207(a)); Padilla v. Manlapaz, 643 F. Supp. 2d 298, 299 (E.D.N.Y. 2009).

NYLL is the state analogue to FLSA. See D'Arpa v. Runway Towing Corp., No. 12-CV-1120(JG), 2013 WL 3010810, at *18 (E.D.N.Y. June 18, 2013) (quoting Santillan v. Henao, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011)). It provides minimum wage and overtime protections as well as additional protections for workers. N. Y. Lab. Law § 652. Plaintiffs bring several claims under NYLL that they could not otherwise bring under FLSA, including for violations of NYLL's wage notice and wage statement requirements.[11] Therefore, plaintiffs must also establish the necessary employer-employee relationship under NYLL.

The definitions for "employee" and "employer" under NYLL are similar to those under FLSA. Lopic v. Mookyodong Yoojung Nakjie, Inc., No. 16-CV-4179(KAM)(CLP), 2017 WL 10845064, at *5 (E.D.N.Y. 2017) (citing N. Y. Lab. Law §§ 2, 651)). However, whereas "an entity is subject to … FLSA if it is engaged in interstate commerce," Arnoldo Lopez Vasquez v. Lahori Kebab & Grill Corp., No. 18-CV-2117 (JS)(SIL), 2019 WL 4396724, at *4 (E.D.N.Y. Aug. 13, 2019), Report and Recommendation adopted by 2019 WL 4620922 (E.D.N.Y. Sept. 5,

---

[11] The Court employs whichever statute provides for the greater recovery. Rana v. Islam, 887 F.3d 118, 123, n.3 (2d Cir. 2018). Using NYLL for plaintiffs' overtime claims here ensures plaintiffs receive the greatest possible recovery.

2019), and has "gross volume of sales made or business done...not less than $500,000," 29

U.S.C. § 203(s)(1)(A)(i)-(ii); see also Padilla, 643 F. Supp. 2d at 300, NYLL's protections are

not limited by any level of gross sales or nexus to interstate commerce. Nam, 2021 WL 878743,

at *4; Lopic, 2017 WL 10845064, at *5 (citing Garcia v. Badyna, No. 13-CV-4021(RRM)(CLP),

2014 WL 4728287, at *6 (E.D.N.Y. Sept. 23, 2014)). Thus, if plaintiffs establish the employer-

employee relationship under FLSA, they will also establish the relationship under NYLL. See Li

v. Leung, No. 15 Civ. 5262(CMA)(VMS), 2016 WL 5369489, at *10 (E.D.N.Y. June 10, 2016))

(quoting Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y 2011)

Report and Recommendation adopted by 2016 WL 5349770 (E.D.N.Y. Sept. 23, 2016)

(recognizing courts in this Circuit have consistently interpreted the definition of "employer"

under NYLL as corresponding exactly to the definition used by FLSA).

FLSA defines an employee as "any individual employed by an employer." Fermin, 93 F.

Supp. 3d at 32 (citing 29 U.S.C. § 203(e)(1)). The statute contains several exceptions which

exclude certain employees from coverage, however, these exceptions do not include restaurant

workers like "kitchen helper/food preparer [and] cook." Id. (citing Garcia v. Pancho Villa's of

Huntington Vill., Inc., No. 09-Cv-486(ETB), 2011 WL 1431978, at *3-4 (E.D.N.Y. Apr. 14,

2011)). "The ultimate question is whether the putative employee is economically dependent on

the putative employer." Velu v. Velocity Exp., Inc., 666 F. Supp. 2d 300, 306 (E.D.N.Y. 2009);

Irizarry v. Catsimatidis, 722 F.3d 99, 104 (2d Cir. 2013) ("the 'economic reality' test applies

equally to whether workers are employees"); see Fermin, 93 F. Supp. 3d at 34 (using a similar

economic test to show plaintiffs' status as employees under NYLL).

Plaintiffs' SAC establishes that plaintiffs are "employees" for purposes of FLSA and NYLL

protection. At all relevant times, plaintiffs Yangyang Gao, Wei Gao, and Zhenkai Sun were

employed as sushi chefs at Sushi Fussion Express. SAC ¶¶ 76, 94, 106. Charles Chippengule was employed as a kitchen worker at Sushi Fussion Express and a fry cook at Hibachi Express. Id. ¶117 – 119. Employment as a sushi chef and/or kitchen worker establishes that plaintiffs meet the definition of "employee" under FLSA. See Fermin, 93 F. Supp. 3d at 32; see also Garcia, 2014 WL 4728287, at *3-4 (finding the profession of a chef is not exempt from FLSA).

Plaintiffs' allegations demonstrate that the corporate defendants are employers subject to FLSA requirements. The SAC asserts that both Sushi Fussion Express and Hibachi Express are businesses engaged in interstate commerce with gross sales in excess of $500,000 per year. SAC ¶¶ 12, 34. Plaintiffs largely restate the statutory requirements to be considered an "enterprise engaged in commerce" under FLSA, without supplying additional facts. However, in the present context, such language is sufficient for the Court to infer that employees handled materials moving in interstate commerce, meeting FLSA's requirements. See Nam v. Ichiba Inc., No. 19-CV-1222(KAM), 2021 WL 878743, at *5 (citing Fermin, 93 F. Supp. 3d at 33, 33 n.3) (finding the interstate commerce requirement was met where plaintiffs pleaded that defendants operated a Japanese restaurant with over $500,000 in annual sales, and defendants failed to appear). The Court has accepted similar allegations to those in the instant complaint when defendant has defaulted. Gunawan v. Sake Sushi Restaurant, 897 F. Supp. 2d 76, 85-86 (E.D.N.Y. 2012) (finding the record was sufficient to meet FLSA's requirements).

Additionally, plaintiffs establish individual defendant Michael Yugadaev is an employer subject to FLSA. The statute defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. §203(d). Determining whether a person is an employer within the meaning of FLSA is an assessment "'grounded in economic reality rather than technical concepts.'" Irizarry, 722 F.3d at 104 (quoting Barfield v. N.Y.C.

Health & Hosp. Corp., 537 F.3d 132, 141 (2d Cir. 2008)). The Second Circuit has "established four factors to determine the 'economic reality' of an employment relationship: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. 104–105 (internal quotation marks omitted) (quoting Barfield, 537 F.3d at 142). Furthermore, courts look to the "totality of the circumstances, and no individual factor is dispositive." Nam, 2021 WL 878743, at *4.

Plaintiffs establish that defendant Yugadaev was their employer under FLSA. Plaintiffs allege Mr. Yugadaev managed the restaurants, hired workers, determined pay and schedules, and managed payroll. SAC ¶¶ 37, 39, 40, 41. In addition to alleging that Mr. Yugadaev was an owner/ operator of the defendant corporations, the facts alleged are sufficient to find defendant Yugadaev was plaintiffs' employer under the economic realities test. See Arnoldo Lopez Vazquez, 2019 WL 4396724, at *4 (citing Moon v. Kwon, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002).

Thus, plaintiffs' SAC establishes that they were employed by defendants, and that defendants are subject to FLSA and NYLL.

### 2.  Joint and Several Liability

When an individual defendant and a corporate entity are both found to be plaintiff's employer, "each Defendant is jointly and severally liable under FLSA and NYLL for any damages award made in Plaintiff's favor." Mahoney v. Amekk Corp., No. 14 Civ. 4131(ENV)(VMS), 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016) (citing Pineda v. Masonry Const. Inc., 831 F. Supp. 2d 666, 685 (S.D.N.Y. 2011)) Report and Recommendation adopted by 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016); see also Li, 2016 WL 5369489, at *11

(citing <u>Pineda</u>, 831 F. Supp. 2d at 685) (stating that each defendant employer was jointly and severally liable for damages under FLSA and NYLL). However, plaintiffs did not all work for every defendant named herein.

Plaintiffs' SAC alleges that Sushi Fussion Express and Hibachi Express constitute a single enterprise.[12] SAC ¶ 63. "Courts use a three-part test to determine when an entity is [a single] enterprise: '(1) the entity or entities must engage in related activities, (2) performed through unified operation or common control, (3) for a common business purpose.'" <u>Lingmain Yang v. Everyday Beauty Amore Inc.</u>, No. 18-CV-729 (BMC), 2018 WL 4783968, at *3 (E.D.N.Y. Oct. 3, 2018) (quoting <u>Marte v. Westbury Mini Mart, Inc.</u>, No. CV 16-53, 2017 WL 9485667, at *5 (E.D.N.Y. Jan. 18, 2017)), <u>Report and Recommendation</u> <u>adopted by</u> 2017 WL 838194 (E.D.N.Y. Mar. 3, 2017).

Plaintiffs do not allege sufficient facts to establish that Sushi Fussion Express and Hibachi Express constitute a single enterprise. Plaintiffs assert that when Hibachi Express closed, defendant Yugadaev transferred all equipment and personnel, including plaintiff Chipengule, to Sushi Fussion Express. SAC ¶ 67. This is not sufficient to find the two corporations constituted a single enterprise. <u>See</u> <u>Lingmain Yang</u>, 2018 WL 4783968, at *4 (finding the corporate defendants operationally interdependent for FLSA purposes); <u>see also</u> <u>United States v. Stanley</u>, 416 F.2d 317, 318 (2d Cir. 1969) (finding "abundant evidence in the record" to support determination that parent and subsidiaries constituted a single enterprise when the corporations "were all located at the same address; production employees were shifted from one to another; [and] the bookkeeping for all was performed by the same employees"). Plaintiffs' SAC only

---

[12] Plaintiffs' SAC alleges all defendant corporations constitute a single enterprise.

alleges Yugadaev transferred personnel and equipment to Sushi Fussion Express after Hibachi Express closed; there are no allegations that the corporations constituted a single enterprise while both restaurants were operational.

Accordingly, defendants Yugadaev and Sushi Fussion Express are subject to joint and several liability for violations of FLSA and NYLL during the time of plaintiffs' employment at Sushi Fussion Express, and defendants Yugadaev and Hibachi Express are subject to joint and several liability for violations of FLSA and NYLL occurring during plaintiff Chipengule's employment at Hibachi Express.

### B. Defendants are Liable for Violations of FLSA and NYLL

### 1. Minimum Wage and Overtime

Under both FLSA and NYLL, employers must meet the minimum wage requirements set by the respective statutes. See 29 U.S.C. § 206(a)(1); N.Y. Lab. Law § 652(1). Although plaintiffs' SAC asserts a general claim for failure to pay minimum wage, their claim only alleges defendants had a policy and practice of refusing to pay the statutory minimum. SAC ¶ 146. Even though some plaintiffs were paid weekly, plaintiffs' hourly wages always exceeded the minimum wage. SAC ¶¶ 84, 101, 112, 126. Plaintiffs' motion for a default judgment fails to establish that plaintiffs were not paid the minimum wage.[13]

Plaintiffs' SAC also alleges that defendants failed to pay proper overtime wages under FLSA and NYLL. Under both statutes, all hours worked in excess of forty hours per week must be compensated at the overtime rate of one and a half times the regular rate of pay. Fermin, 93 F.

---

[13] Although plaintiffs fail to establish that defendants violated their right to the minimum wage, one plaintiff, Wei Gao, alleges that he was not compensated for one week of work. SAC ¶ 102. Alleging unpaid compensation is sufficient to establish defendants' liability for unpaid wages. See Xin Long Lin v. New Fresca Tortillas, Inc., No. 18-CV-3246(RJD)(RER), 2019 WL 3716199, at *2 (E.D.N.Y. May 1, 2019), Report and Recommendation adopted by 2019 WL 3714600 (E.D.N.Y. May 28, 2019).

Supp. 3d at 43. Plaintiffs allege that they routinely worked over forty hours a week, SAC ¶¶ 83, 96, 108, 123, 125, but were not paid overtime. Id. ¶¶ 87, 103, 114, 130. These allegations are sufficient to establish defendants' liability for failure to pay overtime wages under FLSA and NYLL. Nam, 2021 WL 878743, at *4 (citing Leon v. Zita Chen, No. 16-CV-480(KAM)(PK), 2017 WL 1184149, at *7 (E.D.N.Y. Mar. 29, 2017)); Lopic, 2017 WL 10845064, at *6 (citing Guardado v. 13 Wall Street, Inc., 15-CV-02428(DRH)(SIL) 2016 WL 7480358, at *7 (E.D.N.Y. Dec. 2, 2016)).

### 2. Spread of Hours

Under New York law, "[o]n each day on which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate." 12 N.Y.C.R.R. § 146-1.6(a). In the context of a motion for a default judgment, an allegation that a plaintiff worked over 10 hours a day but did not receive an extra hour of pay sufficiently establishes an employer's liability. See Zhen Ming Chen v. Y Café Ave. B. Inc., No. 18-CV-4193(JPO), 2019 WL 2324567, at *3 (S.D.N.Y. May 30, 2019).

Here, plaintiffs allege that they did not receive "spread of hours" pay at any time during their employment although they often worked in excess of ten hours a day. SAC ¶¶ 91, 105, 116, 134. These allegations establish defendants' liability for failure to provide "spread of hours" pay. See Zokirzoda v. Acri Café Inc., No. 18-CV-11630(JPO), 2020 WL 359908, at *2 (S.D.N.Y. Jan 22, 2020).

### 3. Wage Notice and Wage Statement

Plaintiffs allege defendants violated NYLL § 195-1(a), which requires employers to "provide [their] employees, in writing ... a notice containing ... the rate or rates of pay thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other ..." N.Y. Lab. Law § 195(1). Plaintiffs

17

claim they were not provided written notice at the time of hire or at any subsequent time. SAC ¶ 183. These allegations establish defendants' liability under NYLL §195(1). See Wuzi Jiao v. Kitaku Japanese Rest., Inc., No. 16-CV-2694(RRM)(RML), 2020 WL 2527588, at *12 (E.D.N.Y. Mar. 13, 2020), Report and Recommendation adopted by 2020 WL 2523109 (E.D.N.Y. May 18, 2020).

New York law also requires that employers provide employees with a wage statement documenting certain specified information at the time wages are paid. N.Y. Lab. Law § 195(3); see also Piedra v. Ecua Rest., Inc., No. 17-CV-3316(PKC)(CLP), 2018 WL 1136039, at *14-15 (E.D.N.Y. Jan. 31, 2018), Report and Recommendation adopted by 2018 WL 1135652 (E.D.N.Y. Feb. 28, 2018). Allegations that an employer failed to provide these written pay stubs suffice to establish the employer's liability, entitling the employee to damages. Piedra, 2018 WL 1136039, at *14-15. Plaintiffs' allegations in the SAC that defendants did not provide a wage statement along with each wage payment as required under NYLL § 195(3), SAC ¶¶ 187, are sufficient to establish liability.

### 4.  Provision of Mealtimes and Record Keeping

Plaintiffs' SAC alleges defendants violated NYLL §162 when they failed to provide meal periods for every day that plaintiffs worked. SAC ¶ 172. Under NYLL, "[a]n employee who works a shift of more than six hours which extends over the noon day meal period is entitled to at least thirty minutes off within that period for the meal period." N.Y. Lab. Law § 162. However, plaintiffs' claim fails as a matter of law because there is no private right of action under NYLL § 162. Xin Long Lin, 2019 WL 3716199, at *6 (citing Hill v. City of N.Y., 136 F. Supp. 3d 304, 350–51 (E.D.N.Y. 2015) (collecting cases finding no private right of action under Section 162)).

Plaintiffs also allege a violation of 12 N.Y.C.R.R. § 146-2.1 because defendants did not maintain, establish and preserve plaintiffs' weekly payroll records for a period of not less than six years. SAC ¶ 176. Again, plaintiffs' claim fails as a matter of law "because no independent cause of action for violations of New York's recordkeeping requirements exists." <u>Xin Long Lin</u>, 2019 WL 3716199, at *6 (internal quotations omitted) (quoting <u>In re Domino's Pizza Inc.</u>, No. 16-CV-6274 (AJN) (KNF), 2018 WL 1587593, at *7 (S.D.N.Y. Mar. 27, 2018) (finding no independent cause of action under 12 NYCRR § 146-2.1)).

## III.    Damages

It is well established that a default, is "deemed to constitute a concession of all well pleaded allegations of liability," but it is "not considered an admission of damages." <u>Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.</u>, 699 F.3d 230, 234 (2d Cir. 2012) (internal quotation marks and citation omitted); <u>see also</u> <u>Credit Lyonnais Sec. (USA), Inc. v. Alcantara</u>, 183 F.3d 151, 155 (2d Cir. 1999) ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true."). On a motion for a default judgment, a plaintiff has the burden to prove damages to the Court with a "reasonable certainty." <u>Id.</u> (citing <u>Transatlantic Marine Claims Agency, Inc.</u>, 109 F.3d at 111). "There must be an evidentiary basis for the damages sought by plaintiff," although the Court may base its determination on "evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." <u>Cement & Concrete Workers Dist. Council Welfare Fund</u>, 699 F.3d at 234 (citing Fed. R. Civ. P. 55(b)(2); <u>Fustok v. ContiCommodity Services, Inc</u>, 873 F.2d 38, 40 (2d. Cir. 1989)).

Plaintiffs request the following damages:

| Plaintiff | Overtime Compensation | Spread of Hours Compensation | Liquidated Damages | Statutory Damages for Wage Notice and Wage Statement | Total |
|---|---|---|---|---|---|
| Yangyang Gao | $122,220.71 | $6,520.54 | $127,741.25[14] | $10,000 | $267,482.50 |
| Wei Gao | $25,392.86 | $2,005.29 | $27,398.14 | $10,000 | $64,796.29 |
| Zhenkai Sun | $31,238.04 | $2,162.57 | $33,400.61 | $10,000 | $76,801.21 |
| Charles Chipengule | $20,590.55 | $4,121.43 | $24,711.98 | | $59,423.96 |

ECF No. 162, 9-11.

In support of their damages, plaintiffs submit a memorandum of law and plaintiffs' counsel's affidavit. See Id.; ECF No. 161. However, these filings fall short of the "detailed affidavits and documentary evidence" the Court can rely on to calculate plaintiffs' damages. See Credit Lyonnais Sec. (USA), Inc., 183 F.3d at 154–55 (finding the court had "insufficient evidence upon which to enter the amount of the judgment" when it had before it "only the allegations in the complaint and the affidavit of plaintiff's counsel, who did not purport to have personal knowledge of the facts"); see also Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993) (finding a single affidavit only partially based upon real numbers insufficient for an award of damages).

Plaintiffs' memorandum of law refers the Court to the pretrial stipulations agreed to by plaintiffs' counsel and counsel for the defendants who appeared at trial as the basis for the calculation of damages. ECF No. 162 at 7-8. The stipulations regarding the hours worked by

---

[14] Plaintiffs' motion appears to calculate the liquidated damages for each plaintiff by adding the values for overtime and spread of hours compensation. However, the liquidated damages value for plaintiff Yangyang Gao does not reflect the sum of his overtime and spread of hours compensation. As plaintiffs provide no explanation for their calculation, the Court cannot determine the basis for Yangyang Gao's liquidated damages.

each plaintiff are signed by counsel for the defendants who appeared at trial and plaintiffs'

counsel. ECF No. 149. Stipulations agreed to by plaintiffs' counsel and counsel for the

defendants who appeared at trial do not bind the defaulting defendants. See 83 C.J.S. Stipulations

§ 53 (2022) ("persons who are not parties to the stipulation are not bound by it"). Therefore,

these stipulations and plaintiffs' counsel's affidavit are insufficient for the Court to award

plaintiffs damages on the instant motion for a default judgment.

The burden rests on an employee to prove that he was not appropriately compensated for

the work he performed. Newman v. West Bar & Lounge, Inc., 20-CV-1141(KAM)(RER) 2021

WL 2401176, at *6 (E.D.N.Y. Jun. 11, 2021) (quoting Rodriguez v. Queens Convenience Deli

Corp., No. 09-CV-1089(KAM)(SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011)).

When a defendant fails to appear and produce employment records, the Court may credit a

plaintiff's assertions regarding the hours he worked and the compensation he received, even

when based only on plaintiff's recollection. Hernandez Gomez v. 4 Runners, Inc., 769 Fed.

Appx. 1, 2 (2d Cir. 2019) (summary order) (quoting Kuebel v. Black & Decker Inc., 643 F.3d

352, 362 (2d Cir. 2011)); Newman, 2021 WL 2401176, at *6-7 (quoting Rivera v. Ndola Pharm

Corp., 497 F. Supp. 2d 381, 388 (E.D.N.Y. 2007)); Arnoldo Lopez Vazquez, 2019 WL 4396724,

at *6 (citing Perez v. Queens Boro Yang Cleaners, Inc., No. 14-CV-7310(SJ)(JO) , 2016 WL

1359218, at *2 (E.D.N.Y. Mar. 17, 2016)) Report and Recommendation adopted by 2016 WL

1337310 (E.D.N.Y. Apr. 5, 2016). A Court may award damages based upon a plaintiff's

recollection of the hours he worked "even though the result is only approximate." Hernandez

Gomez, 769 Fed Appx. at 2 (quoting Reich v. S. New England Telecomm. Corp., 121 F.3d 58,

66-67 (2d Cir. 1997)).

However, here plaintiffs fail to support their claim for damages with their own recollections. The Court cannot accept plaintiffs' counsel's affidavit as a substitute for plaintiffs' sworn statements.[15] Plaintiffs have not submitted sufficient evidence for the Court to determine damages on the instant record. I recommend that the Court should deny plaintiffs' instant motion for damages, but allow plaintiffs to refile their motion for a default judgment supported by sufficient evidence to determine damages within thirty days. In the alternative, plaintiffs should request an inquest on damages where all plaintiffs shall testify.

## CONCLUSION

Accordingly, it is respectfully recommended that plaintiffs' motion for a default judgment against Yugadaev, Sushi Fussion Express, and Hibachi Express should be granted in part and denied in part. Plaintiffs' motion should be granted as to defendants' liability on plaintiffs' overtime, spread of hours, and statutory violations of wage notice and wage statement claims. Wei Gao's claim for one week of unpaid wages should also be granted. The Court should deny plaintiffs' motion for a default judgment regarding damages without prejudice. Plaintiff is hereby directed to serve this Report and Recommendation on defendants Michael Yugadaev, Sushi Fussion Express, and Hibachi Express, and file proof of service with the Court forthwith.

---

[15] If necessary, any sworn statement by plaintiffs must include certification that the statement was translated into plaintiffs' spoken language prior to plaintiff signing it.

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

                                                     /S/

                                                 LOIS BLOOM
                                                 United States Magistrate Judge

Dated: March 8, 2022
        Brooklyn, New York