UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x
ZHENKAI SUN, WEI GAO, YANGYANG
GAO, *also known as* Eddie Gao, and CHARLES
CHIPENGULE, *on behalf of themselves and
others similarly situated*,

                      Plaintiffs,                      **MEMORANDUM AND ORDER**

                   v.                                        16-CV-4840 (RPK) (LB)

SUSHI FUSSION EXPRESS, INC., *doing
business as* Sushi Fussion, MICHAEL M.
YUGADAEV, SUSHI FUSSION LLC, *doing
Business as* Sushi Fussion, SUSHI FUSSION OF
KINGS HWY, INC., *doing business as* Sushi
Fussion, LEVA KATANOV, LEVI KATANOV,
LEO KATANOV, SUSHI FUSSION
FIVETOWN INC, *doing business as* Sushi Fussion,
SUSHI FUSSION OF 47TH ST INC, *doing business
as* Sushi Fussion, SUSHI FUSSION OF FOREST
HILLS INC, *doing business as Sushi Fussion*,
SUSHI FUSSION OF NYC INC, *doing business as*
Sushi Fussion, HIBACHI EXPRESS
MAIN ST. INC, *doing business as* Hibachi Express,

                      Defendants.
---------------------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

      Plaintiffs Zhenkai Sun, Wei Gao, Charles Chipengule, and Yangyang Gao move for a judgment of attorney's fees and costs. I grant the motion in part, and award $37,315.85 in attorney's fees and $2,054.10 in costs.

## BACKGROUND

      Zhenkai Sun, Wei Gao, Yangyang Gao, and Charles Chipengule brought this lawsuit against individual defendants Michael Yugadaev and Leva Katanov (a/k/a Levi Katanov or Leo Katanov) and eight corporate defendants doing business as "Sushi Fussion" and "Hibachi Express." *See* Am. Compl. (Dkt. #55). As relevant here, plaintiffs alleged violations of the Fair

1

Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 190, 650 *et seq.*

Plaintiffs proceeded to a jury trial against five defendants: Mr. Katanov, as well as corporate entities Sushi Fussion LLC, Sushi Fussion of 47th Street, Inc., Sushi Fussion of Forest Hills, Inc., and Sushi Fussion of NYC, Inc. (collectively, the "Katanov Defendants"). *See* Joint Pretrial Order (Dkt. #137); Nov. 10, 2021 Pl.'s Letter (Dkt. #147). The other defendants—Michael Yugadaev, Sushi Fussion Express, Inc., Sushi Fussion of Kings Hwy, Inc., Sushi Fussion Fivetown, Inc., and Hibachi Express Main St. Inc. (collectively, the "Yugadaev Defendants")—did not appear for trial and have defaulted.

At the trial, plaintiff Yangyang Gao prevailed on his minimum and overtime wage, spread-of-hours, wage-notice, and wage-statement claims against Leva Katanov and Sushi Fussion LLC for the time that Gao worked for Sushi Fussion LLC. *See* Verdict Form (Dkt. #153); Judgment (Dkt. #180); May 25, 2022 Order. He did not prevail on his claims against the Katanov Defendants for the period when he worked for the Yugadaev Defendants. *See* Verdict Form.

Plaintiffs Wei Gao, Zhenkai Sun, and Charles Chipengule did not prevail on any of their claims against the Katanov Defendants. *See ibid.*

Consistent with the jury verdict, the Clerk of Court has entered judgment for Yangyang Gao in the amount of $261,744.64, including pre- and post-judgment interest. *See* Statement of Damages (Dkt. #157); Dec. 9, 2021 Order; Judgment.

Yangyang Gao now moves for an award of attorney's fees and costs. *See* Mem. in Supp. of Mot. for Atty.'s Fees & Costs (Dkt. #165) ("Pl.'s Mem.").

2

**DISCUSSION**

Both the FLSA and the NYLL provide for the award of reasonable attorney's fees and costs to a prevailing plaintiff.  *See* 29 U.S.C. § 216(b); N.Y. Lab. L. §§ 198, 663(1); *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020).  The applicant bears the burden to "demonstrate the reasonableness and necessity of hours spent and rates charged," *Kindle v. Dejana*, 308 F. Supp. 3d 698, 703 (E.D.N.Y. 2018) (citation omitted), and "must submit adequate documentation supporting the requested . . . fees and costs," *Fisher*, 948 F.3d at 600.  As explained below, Yangyang Gao is entitled to $37,315.85 in attorney's fees and $2,054.10 in costs.

I.   **Attorney's Fees**

The "lodestar," or "the product of a reasonable hourly rate and the reasonable number of hours required by the case[,] creates a presumptively reasonable fee." *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (internal quotation marks and citation omitted).  Factors that may inform whether a fee is reasonable include "[t]he time and labor required" in litigating a case," "[t]he novelty and difficulty of the questions" involved, "[t]he skill requisite to perform the legal service properly," "[t]he customary fee for similar work in the community," "[t]he experience, reputation, and ability of the attorneys," "[t]he . . . results obtained," and "[a]wards in similar cases." *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir. 1974), *abrogated on other grounds*, *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989); *Lilly v. City of New York*, 934 F.3d 222, 233 (2d Cir. 2019) (explaining that the *Johnson* factors "remain important tools for helping district courts calculate the lodestar").

A.   **Reasonable Hourly Rates**

"The reasonable hourly rate is the rate a paying client would be willing to pay . . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to

3

litigate the case effectively." *Lilly*, 934 F.3d at 231 (quoting *Arbor Hill Concern Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)). Generally, courts "use the hourly rates employed in the district in which the reviewing court sits," *Restivo v. Hessemann*, 846 F.3d 547, 590 (2d Cir. 2017) (citation omitted), "for similar services by lawyers of reasonably comparable skill, experience, and reputation," *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998). But district courts have "considerable discretion[] to bear in mind *all* of the case-specific variables . . . relevant to . . . a reasonable hourly rate," including the attorney's experience and the complexity of the litigation. *Lilly*, 934 F.3d at 232 (quoting *Arbor Hill*, 522 F.3d at 190).

Plaintiff's attorneys request $650 per hour for Troy Law's managing partner, John Troy, $400 per hour for managing associate Aaron Schweitzer, $350 per hour for managing associate George Byun, $300 per hour for attorney Adam Dong, $250 per hour for associate Joseph Indelicato, $250 per hour for associate Shuyang Xie, $200 per hour for attorney Tiffany Troy, $200 per hour for clerk William Lou, $150 per hour for paralegals Bella Ying Chu Ho and Bingyu Huang, and $200 per hour for office manager Preethi Kilaru. *See* Pl.'s Mem. 7-8. Those rates are unreasonable.

In this district, "approved hourly rates for attorneys normally range from $200 to $450 for partners in law firms, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for paralegals." *Chocolatl v. Rendezvous Cafe, Inc.*, No. 18-CV-3372 (CBA) (VMS), 2019 WL 5694104, at *14 (E.D.N.Y. Aug. 16, 2019) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2020 WL 1270891 (E.D.N.Y. Mar. 17, 2020).

Taking into consideration the rates commonly paid in this district and the performance of counsel in this case, $325 is an appropriate rate for John Troy in this lawsuit. While several recent decisions in this district "have approved a rate of $375 per hour for Troy's work," *Lin v. La Vie En Schezuan Rest. Corp.*, No. 15-CV-9507 (DF), 2020 WL 1819941, at *3 (S.D.N.Y. Apr. 9, 2020) (discussing Eastern District cases), and one court in this district approved $450 per hour, *Chen v. Asian Terrace Rest., Inc.*, 507 F. Supp. 3d 430, 435 (E.D.N.Y. 2020), other courts in this district have awarded fees at the lower rate of $300 based on performance deficiencies, *Schezuan Rest. Corp.*, 2020 WL 1819941, at *3 (discussing cases in the Eastern and Southern Districts of New York). As "the principal of Troy Law," Troy "is responsible for the work of" his entire litigation team. *Id.* at *4. Accordingly, although Troy did not participate in the trial itself, "it is fair to consider both how this case was managed from its inception and how the trial itself was conducted in determining a reasonable hourly rate for his work." *Ibid.*

Taking into account that performance, Troy's work merits an hourly rate of $325. Before trial, attorneys for Troy Law arrived to court late, *see* Apr. 25, 2018 Order, and their written submissions did not reflect the attention to detail typical of most law firms' filings. To take one example, Mr. Troy's declaration in support of the fees application at issue here is filled with typographical and spelling errors. *See, e.g.*, Decl. of John Troy in Supp. of Mot. for Attys.' Fees & Costs ¶¶ 17, 19, 20, 21, 22 (Dkt. #164). And as discussed below, at trial, counsel often asked confusing and unhelpful questions of witnesses who themselves appeared underprepared. A rate of $325 per hour for Mr. Troy appropriately takes into account both the prevailing rates in this district and the performance of the Troy Law team during the litigation of this case.

$115 per hour is appropriate for Schweitzer, who conducted the trial. Courts in this district have often awarded Schweitzer around $150 per hour, *see Jin v. Shanghai Original, Inc.*,

5

No. 16-CV-5633 (ARR) (JO), 2020 WL 4783399, at *5 (E.D.N.Y. Aug. 18, 2020); *Xie v. Sakura Kai I Inc.*, 2020 WL 4587473, at *2 (E.D.N.Y. Mar. 12, 2020), *report and recommendation adopted*, 2020 WL 2569406 (E.D.N.Y. May 20, 2020); *Singh v. A & A Mkt. Plaza, Inc.*, No. 15-CV-7396 (AKT), 2019 WL 4861882, at *9 (E.D.N.Y. Sept. 30, 2019), but this particular trial warrants a somewhat reduced rate, *see Millea*, 658 F.3d at 168-69. The presentation of plaintiff's case was impeded by confusing questions, *see, e.g.*, Trial Tr. at 34:6-35:13 (Dkt. #185), elicitation of testimony with no discernable relevance to plaintiffs' claims, *see, e.g.*, *id.* at 39:22-40:7 (Dkt. #185); *id.* at 113:6-13 (Dkt. #183); *id.* at 193:3-5 (Dkt. #183), and an apparent failure to prepare plaintiff's witnesses for questions about the relationship between the Katanov and Yugadaev Defendants, *see e.g.*, Trial Tr. at 38:5-14 (Dkt. #185); *id.* at 86:10-87:12 (Dkt. #183); *id.* at 131:22-132:2 (Dkt. #183). The seeming confusion of plaintiff's witnesses when questioned on this topic undermined plaintiffs' theory that the corporate defendants operated as a single integrated enterprise—the linchpin of Chipengule's, Wei Gao's, and Zhenkai Sun's claims against the appearing Katanov Defendants, as well as some of Yangyang Gao's claims. Taking into account trial performance issues "not accounted for in the prevailing market rate," *Millea*, 658 F.3d at 168-69, I award Schweitzer $115 per hour.

A rate of $150 per hour is appropriate for Byun, a "managing associate," Decl. of John Troy ¶ 55, who has been awarded comparable rates in other cases. *See, e.g.*, *Schezuan Rest. Corp.*, 2020 WL 1819941, at *5 (compiling cases awarding Byun fees at a rate of $150 to $200 per hour).

A rate of $110 per hour, at the lower end of the range used by courts in this district for junior associates, is reasonable for Indelicato and Xie. *See Rendezvous Cafe*, 2019 WL 5694104, at *14. During the few months that Xie and Indelicato worked on this case, they had around a

year of post-graduation legal experience. *See* Decl. of John Troy ¶¶ 79-84 (Indelicato), 85-90 (Xie); Invoice 5-7 (entries for Indelicato's work during June and July 2017) (Dkt. #164-1); 9 (entries for Xie's clerical work in March and April 2018). Accordingly, $110 per hour is an appropriate rate for Indelicato and Xie.

A rate of $100 per hour is reasonable for William Lou, Adam Dong, and Tiffany Troy. Lou became a "clerk" at Troy Law in October 2016, five months after graduating from law school, *see* Decl. of John Troy ¶¶ 101, 103, and he appears to have worked on this case between January and March 2017, *see* Invoice 3-4. Similarly, Dong appears to have worked on this case before being admitted to the New York bar or joining Troy Law as an associate. *See* Invoice 10 (two billing entries for Mr. Dong dated August 2018); Decl. of John Troy ¶¶ 69, 72 (indicating that Mr. Dong did not join Troy Law as an associate until June 2019 and was not admitted to practice in New York until October 2019). Finally, Tiffany Troy appears to have functioned as a support staff member in this matter, performing roles that did not require legal training, *see* Invoice 10, 11, 12 (entries for July 2018, March 2020, June 2021, September 2021 ("Line [c]lients regarding [u]pcoming trial"), November 2021 ("Remind [c]lients for trial [preparation]")); and plaintiff's papers do not contain sufficient information to determine at what time she became an attorney, *see* Decl. of John Troy ¶¶ 91-100, 97 (describing December 2020 work in law school clinic). Given uncertainties about the nature of Lou's, Dong's, and Tiffany Troy's work on this case and their respective legal experience, a rate at the bottom of the range for junior attorneys and at the very top of the range for paralegals is appropriate.

Finally, courts in this district usually award non-attorneys and support staff at Troy Law $75 per hour for their work on similar cases, and I find such an hourly rate is reasonable here for Ho, Huang, and Kilaru. *See Shanghai Original*, 2020 WL 4783399, at *5; *Sakura Kai*, 2020 WL

7

4587473, at *2; *Chen v. LJC Trading N.Y., Inc.*, No. 19-CV-3276 (SJF) (AKT), 2020 WL 10574176, at *11 (E.D.N.Y. Nov. 20, 2020) ($75 per hour for non-attorneys and support staff).

Plaintiff does not offer a compelling reason to depart from the rates noted above. Increases in the New York State minimum wage over the past five years do not mean that "the prevailing market rates and caps for [lawyers] representing clients in wage-and-hour cases in the Second Circuit ha[ve] increased as well." Pls.' Mem. 7. To the contrary, "the increase in minimum wage for covered hourly workers has nothing to do with hourly rates for lawyers – a market that is almost entirely unregulated." *Asian Terrace Rest., Inc.*, 507 F. Supp. 3d at 435. Moreover, the rates I use are similar to those used for Troy Law attorneys by numerous courts in this district within the last two years. Sporadic cases from the Southern District of New York and the District of New Jersey awarding these attorneys higher rates are unpersuasive, *see* Pls.' Mem. 7-9; Pls.' Reply 1-2 (Dkt. #170). The rates awarded must be prevailing "in *this* district," *Asian Terrace*, 507 F. Supp. at 435 (emphasis added) (citing *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)), and in any event, some courts in the Southern District of New York have awarded Troy Law attorneys and staff rates similar to those that I set forth above, *see, e.g.*, *Lin v. Ginza 685 Inc.*, No. 18-CV-12202 (AJN), 2021 WL 2138511, at *2 (S.D.N.Y. May 26, 2021); *Schezuan Rest. Corp.*, 2020 WL 1819941, at *3-6; *Rodpracha v. Pongsri Thai Rest. Corp.*, No. 14-CV-2451 (DF), 2021 WL 6205861, at *3 (S.D.N.Y. Dec. 29, 2021).

Therefore, I find that John Troy's reasonable hourly rate for work on this case is $325, Byun's is $150, Schweitzer's is $115, Xie and Indelicato's is $110, Lou, Dong, and Tiffany Troy's is $100, and Ho, Huang, and Kilaru's is $75.

### B.    Reasonably Expended Hours

#### 1.    Overbilling

Because the number of hours billed by Troy Law in this case is grossly excessive, a forty-percent across-the-board reduction is appropriate.

"In determining the number of hours reasonably expended for purposes of calculating the lodestar, the district court should exclude excessive, redundant or otherwise unnecessary hours," *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999), as well as time entries that "are vague or otherwise inadequate to enable the court to determine the reasonableness of the work performed," *Wen v. Hair Party 24 Hours Inc.*, No. 15-CV-10186 (ER) (DCF), 2021 WL 3375615, at *14 (S.D.N.Y. May 17, 2021) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)), *report and recommendation adopted*, 2021 WL 2767152 (S.D.N.Y. July 2, 2021). To calculate reasonable hours expended in litigating a case, "[a] district court may . . . use a percentage deduction as a practical means of trimming fat." *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (internal quotation marks and citation omitted).

Here, attorney time sheets reflect systematic overbilling, as well as billing by attorneys for simple clerical tasks that could be performed by non-attorneys. For example, John Troy, the firm's named partner, billed three-and-a-half hours to file the complaint, a task that should have taken support staff a fraction of that time. *See* Invoice 1. That same day, Troy billed an additional hour at his putative $650 per hour rate to file two consent forms to become a party to the action. *See id.* at 1-2. At various other times, John Troy billed time for making copies of documents, *see id.* at 2 (entry for Aug. 31, 2016 copying summons and complaint), and filing summonses on the docket, *see id.* at 3 (entry for Nov. 18, 2016). "[A] close review of the tasks that Mr. Troy performed reveals that much and perhaps most of this work could have been

performed by junior associates," *Zhang v. Lin Kumo Japanese Rest. Inc.*, No. 13-CV-6667 (PAE), 2015 WL 5122530, at *2 (S.D.N.Y. Aug. 31, 2015), or clerical staff.

Those billing issues are not confined to John Troy. Byun, a "managing associate," Decl. of John Troy ¶ 55, billed time for printing and mailing discovery materials, *see* Invoice 5 (entries for June 12, 2017). Attorney Xie billed almost ten hours on March 31, 2018 for "[i]nput[ting] [n]ames into [d]atabase" and "[v]erify[ing] [a]ddresses." *Id.* at 9. On April 7, 2018, Xie billed more than seven hours for printing envelopes and a "[n]otice of [p]endency." *Ibid.* On one occasion, Schweitzer billed an hour for calling a court clerk and writing a letter "requesting to permit laptop," presumably at a hearing. *Ibid.* "In this relatively straightforward . . . case" under the FSLA and the NYLL, "staffing the case in such a manner warrants an across-the-board adjustment in the number of hours billed." *Agudelo v. E&D LLC*, No. 12-CV-960 (HB), 2013 WL 1401887, at *2 (S.D.N.Y. Apr. 4, 2013); *Sakura Kai*, 2020 WL 4587473, at *4 (forty-percent across-the-board reduction after re-allocating most of John Troy's hours to junior attorneys).

Moreover, many of the time entries "are too vague to allow for meaningful judicial scrutiny," *Hair Party*, 2021 WL 3375615, at *23. For example, the time sheet includes entries with no more detail than "Research: Lexis Nexis /Legal / Others," Invoice 1, "review order," *id.* at 3, "review file, memo, intake," *id.* at 4, "Plaintiff(s)' Interrogatories," *id.* at 5, "Entity research," *id.* at 7, "Case Review," *ibid.*, and "Writing memo," *id.* at 8.

Because plaintiffs' attorneys' billing records are frequently "vague" and "reflect overstaffing and poor billing judgment," a forty-percent blanket reduction of billable hours is appropriate. *Shanghai Original*, 2020 WL 4783399, at *8.

### 2. Bankruptcy Litigation

Plaintiff is not entitled to fees and costs from Katanov and Sushi Fussion LLC for hours worked in bankruptcy proceedings in the United States Bankruptcy Court for the Southern District of New York. *See* Pls.' Mem. 1; Decl. of John Troy ¶ 13. Defendants Yagudaev and Sushi Fussion Express, Inc. initiated those proceedings, and plaintiffs' attorneys allegedly succeeded at lifting an automatic bankruptcy stay that had issued in those proceedings. *See* Pls.' Mem. 1-2. Plaintiff argues that his attorneys' actions in the Yagudaev bankruptcy proceedings "paved the way for [the] entry of a jury verdict against" Katanov and Sushi Fussion LLC. *Id.* at 2; *see Jackson v. Egira, LLC*, No. 14-CV-3114 (RDB), 2017 WL 4162128, at *3 (D. Md. July 28, 2017). But plaintiff does not explain how the Yagudaev bankruptcy proceedings had any effect on plaintiff's claims against Katanov and Sushi Fussion LLC. Indeed, automatic bankruptcy stays under 11 U.S.C. § 362(a) do not usually apply to non-debtor parties. *See In re Stillwater Asset Backed Offshore Fund Ltd.*, 565 B.R. 42, 46-47 (S.D.N.Y. 2017); *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287-88 (2d Cir. 2003) ("A suit against a codefendant is not automatically stayed by the debtor's bankruptcy filing. . . . The automatic stay can apply to non-debtors, but normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtors estate." (alteration and citation omitted)). Accordingly, with respect to the jury verdict against Katanov and Sushi Fussion LLC, plaintiff has not established that the legal work performed in the bankruptcy proceedings was "critical." *Levin v. Levans, Inc.*, No. 08-CV-61730, 2010 WL 1571192, at *2 (S.D. Fla. Mar. 15, 2010), *report and recommendation adopted*, 2010 WL 1610417 (S.D. Fla. Apr. 20, 2010), or a "necessary step," *Smith v. WBY, Inc.*, No. 16-CV-4017 (MLB), 2021 WL 4224012, at *4 (N.D. Ga. Sept. 16, 2021). Moreover, plaintiff offers no legal explanation or authority as to why the Katanov and Yagudaev Defendants are "jointly and [severally] liable," Pls.' Reply 4, especially

since plaintiffs lost at trial on their theory that the corporate Katanov and Yagudaev defendants operated as a single integrated enterprise, *see* Verdict Form.  Because plaintiff has not articulated a reason why Katanov and Sushi Fussion LLC are responsible for any fees incurred in the litigation of bankruptcy proceedings initiated by certain Yagudaev Defendants, I decline to award fees for those hours on this motion.

### 3. Travel Time

Because the parties agree that plaintiff's attorney's travel time should be billed at half of their hourly rate, I will adjust billing entries for travel accordingly.  *See* Pls.' Reply 4.

### C.       Success in the Litigation

I decline to apply a further reduction to the fee award based on plaintiffs' limited success in this litigation.  *See* Decl. of Michael Samuel in Opp'n to Pl.'s Mot. for Attys.' Fees 6-7 (Dkt. #169) ("Defs.' Opp'n"); Verdict Form.  "[T]he most critical factor in a district court's determination of what constitutes reasonable attorney's fees in a given case is the degree of success obtained by the plaintiff."  *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (internal quotation marks omitted) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).  But the Second Circuit has clarified that "[a]bsent a purely technical victory in an otherwise frivolous suit, litigation outcomes are only relevant to fee award calculations when they are a direct result of the quality of the attorney's performance[,] . . . [a]nd . . . considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate used to calculate the lodestar initially."  *Millea*, 658 F.3d at 168 (internal quotation marks omitted) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010)).  As defendants suggest, *see* Defs.' Opp'n 6-7, plaintiffs' poor performance at trial is significant, but "I have already considered the quality of [p]laintiff[s'] counsel's performance when I set their reasonable hourly rates," and I have reduced attorney hours to account for their

poor billing and staffing practices. *Wan v. YWL USA Inc.*, No. 18-CV-10334 (CS), 2021 WL 1905036, at *9 (S.D.N.Y. May 12, 2021). Defendants have pointed to no "exceptional circumstances" that would make further adjustment of the lodestar appropriate. *Millea*, 658 F.3d at 169.

### D. Final Calculation

As I explained above, John Troy's reasonable hourly rate is $325, Byun's is $150, Schweitzer's is $115, Xie and Indelicato's is $110, Lou, Dong, and Tiffany Troy's is $100, and Ho, Huang, and Kilaru's is $75. I exclude hours separately billed for the bankruptcy proceedings, *see* Invoice 1-3 (Dkt. #164-2); Invoice 1-3 (Dkt. #164-3), bill travel time at one-half of the relevant hourly rates, and apply a forty-percent across-the-board reduction to the hours expended in this action.

| Name | Hourly Rate | Travel Hours | Travel Hours (40%) | Other Hours | Other Hours (40%) | Total Fees |
|---|---|---|---|---|---|---|
| John Troy | $325.00 | | | 85.85 | 51.51 | $16,740.75 |
| George Byun | $150.00 | 4.58 | 2.75 | 90.33 | 54.20 | $8,336.25 |
| Aaron Schweitzer | $115.00 | 7.33 | 4.4 | 108.98 | 65.39 | $7,772.85 |
| Shuyang Xie | $110.00 | | | 22.50 | 13.50 | $1,485.00 |
| Joseph Indelicato | $110.00 | 2.5 | 1.5 | 20.42 | 12.25 | $1,430.00 |
| Adam Dong | $100.00 | | | 3.25 | 1.95 | $195.00 |
| William Lou | $100.00 | | | 0.99 | 0.59 | $59.00 |
| Tiffany Troy | $100.00 | | | 4.82 | 2.89 | $289.00 |
| Bella Yingchu Ho | $75.00 | | | 7.32 | 4.39 | $329.25 |
| Bingyu Huang | $75.00 | | | 1.30 | 0.78 | $58.50 |
| Preethi Kilaru | $75.00 | 0.83 | .5 | 13.36 | 8.02 | $620.25 |

| Total: | | | | | | $37,315.85 |
|---|---|---|---|---|---|---|

*See* Decl. of John Troy ¶ 118; Invoice 1-13 (Dkt. #164-1).

Accordingly, the reasonable fee in this case is $37,315.85

## II. Costs

Costs "normally include[] those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." *Fisher*, 948 F.3d at 600 (quoting *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)). Plaintiff seeks $2,054.10 in filing, service, travel, and mailing costs related to this action, *see* Decl. of John Troy ¶ 120, and defendants do not appear to object to that figure, *see* Defs.' Opp'n. Accordingly, I find that $2,054.10 is a reasonable amount of costs to award plaintiff in this action.

## CONCLUSION

Plaintiff's motion is granted in part. I award plaintiff $37,315.85 in attorney's fees and $2,054.10 in costs in conjunction with the judgment entered on April 28, 2022.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated: June 17, 2022
      Brooklyn, New York